United States District Court
Southern District of Texas

**ENTERED**

February 03, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KENNETH DOUGHERTY, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-1924 |
| | § | |
| STEVE HART RESTORATION AND | § | |
| RACE PREPARATION, LTD., | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING MOTION TO ALTER OR AMEND**

This dispute over whether Ken Dougherty hired Steve Hart Restoration to rebuild, restore, or replicate a vintage racecar has ended, at least at this level. The court ruled in favor of Hart Restoration, finding that Dougherty's fraud and Texas Deceptive Trade Practices Act claims were untimely. Hart Restoration now asks the court to amend that favorable judgment by finding under § 17.50(c) of the Texas Business and Commerce Code that Dougherty's claims were groundless and brought in bad faith. Hart Restoration wants to use that finding to seek the $250,000 it spent in attorneys' fees to obtain the summary judgment in its favor. (Docket Entry No. 67). Dougherty has responded, accusing Hart Restoration of filing a groundless motion and acting in bad faith. (Docket Entry No. 70). Both are wrong.

Based on the motion and response, the record, and the applicable law, this court finds an insufficient basis to conclude that Dougherty sued knowing that his lawsuit was groundless or filed in bad faith because he filed it too late and based it on "forged" evidence. The hindsight record does show that the parties' exchanges and Dougherty's knowledge meant that he needed to sue earlier than he did. The record also shows that the documents Dougherty produced and testified

about in support of his claim were of questionable authenticity and provenance.  Neither the motion to alter or amend the judgment, or the lawsuit it ended, is frivolous, but neither succeeds.

## I.      The Legal Standard

The Deceptive Trade Practices Act allows attorneys' fees for a defendant who show that "an action under [§ 17.50] was groundless in fact or brought in bad faith, or brought for the purpose of harassment."  Tex. Bus. & Com. Code § 17.50(c).  The parties agree that "groundless" under the Deceptive Trade Practices Act means having "no basis in law or fact and not warranted by a good faith argument for the extension, modification, or reversal of existing law."  *Cypress Engine Accessories*, LLC v. HDMS Ltd. Co., 283 F.Supp.3d 580, 592 (S.D. Tex. 2017) (quoting *Young v. Pulte Homes of Tex., L.P.*, No. 02-14-00224-CV, 2016 WL 4491517, at *5, 2016 Tex. App. LEXIS 9485, at *14 (Tex. App.—Fort Worth Aug. 26, 2016)).  "The test for groundlessness is 'whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim.'" *Cypress Engine*, 283 F. Supp. 3d at 592 (quoting *Young v. Pulte Homes of Texas, L.P.*, , 2016 WL 4491517, at *5).  A suit is brought in "bad faith" if it is motivated by a malicious or discriminatory purpose.  *Riddick v. Quail Harbor Condo. Ass'n, Inc.*, 7 S.W.3d 663, 677 (Tex. App.—Houston[14th Dist.] 1999, no pet.).

Whether a suit is groundless or brought in bad faith is a question of law for the trial court. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637. (Tex. 1989).  The court may consider evidence that is legally inadmissible or subject to other defects in making this determination if there is some good faith belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence.  *Riddick*, 7 S.W.3d at 677.

2

## II.    Analysis

Hart argues that because Dougherty knew or should have known that his claims were time-barred, his claims were groundless as a matter of law.  The fact that a court finds that a plaintiff's claims are time barred does not necessarily mean that the Deceptive Trade Practices Act claim was groundless.  *Jacquez v. Compass Bank*, 2016 WL 4368265 at *2 (W.D. Tex. 2016).  *See also Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 190 (Tex. App.—Texarkana 2011, no pet.) (a claim was not "groundless" for purposes of sanctions where the plaintiff "alleged at least an arguable basis for the delayed accrual of the statute of limitations, based on assertions of fraud, fraudulent concealment, and [that] the claim [] was inherently undiscoverable").  Dougherty provided an arguable basis for the delayed accrual of the statute of limitations based on Hart's comments in 2011, which he understood to be assurances that the racecar would be a restored racecar.  The court disagreed and concluded that it was not reasonable for Dougherty to rely on these comments rather than file this lawsuit.  Dougherty provided an arguable, although inadequate, basis to support that his claims were not time-barred.

The cases relied on by Hart do not help his argument.  In *Cypress Engine*, the court concluded that claims were groundless as a matter of law when the party asserting them had released the claims in a settlement agreement.  *Cypress Engine Accessories*, 283 F. Supp. 3d at 592.  In *Haynesville Shale*, the court concluded that the claim was groundless in fact and in law because it involved more than $500,000 and "express statutory language proscrib[es] claims relating to transactions of more than $500,000."  *Haynesville Shale Rentals, LLC v. Total Equip. & Serv., Inc.*, No. CIV.A. H-12-0860, 2014 WL 1379884, at *4 (S.D. Tex. Apr. 8, 2014).  The court explained that the claim failed "based on the statute itself" which gave the defendants a "simple and straightforward" right to judgment.  *Id.* at *5.  Dougherty's arguments involved the

reasonableness of his interpretation of Hart's comments. Although the court concluded that Dougherty's beliefs were unreasonable, this was not a "simple and straightforward" assessment based on express statutory language as in *Haynesville*, or an express release in a settlement agreement as in *Cypress Engine*.

Hart argues that this suit was brought in bad faith or to harass him because it was "brought to coerce settlement and based on forged evidence." (Docket Entry No. 67 at 5). "A person acts in bad faith when he has knowledge of enough facts and circumstances to know that his or her actions are wrong, and with such knowledge, acts with intentional disregard for the rights of others." *McClung v. Wal-Mart*, 866 F. Supp. 306, 311 (N.D. Tex. 1994). Bad faith is not mere bad judgment or negligence; it is the "conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Lake Travis Independent School Dist. v. Lovelace*, 243 S.W.3d 244, 254 (Tex. App.—Austin 2007, no pet.). A lawsuit meets the definition of harassment under § 17.50(c) only if that lawsuit was brought solely for the purpose of harassment. *Donwerth*, 775 S.W.2d at 638. Courts presume good faith; the party seeking attorney's fees has the burden of overcoming such presumption. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993).

In *McClung*, the court concluded that the plaintiff brought the lawsuit in bad faith to "coerce" a settlement with the defendant. *McClung*, 866 F. Supp. at 311. The plaintiff pursued "groundless" claims under the Deceptive Trade Practices Act based on an alleged assault and false arrest. *Id.* The court explained that there was "no legal or factual basis, at all, to support the Plaintiff's contentions that Wal-Mart deceived him, as a consumer, when its employees allegedly assaulted him in the parking lot." *Id.* In *McClung*, the facts giving rise to the lawsuit were unrelated to any possible claim under the Deceptive Trade Practices Act. That is not the case for Dougherty's claims which were untimely because he unreasonably relied on Hart's assurances

4

about the project.  Hart also argues Dougherty brought the lawsuit to coerce Hart to sign a statement that the Birdcage was the original, restored Maserati Birdcage No. 2459.  (Docket Entry No. 67 at 6).  But this is not coercive like the frivolous claims in *McClung*—the request goes to the heart of the disagreement giving rise to this lawsuit and evidences typical settlement negotiations.

Hart also argues that Dougherty's claims were based on forged evidence.  Hart relies on Dougherty's deposition in which Dougherty was unable to explain how he obtained the original receipts or how much he paid for them, and that Dougherty became "agitated" by questions about whether he created the receipts or instructed someone else to do so.  (Docket Entry No. 67 at 7–10).  But in the same deposition Dougherty stated that he did not create the receipts or ask anyone else to create them.  (Docket Entry No. 67-1 at 21–23).  Scott Hamilton's testimony, which Hart argues shows that the receipts are forged, only explains that the logos on the receipts supports that the receipts could not have been created before 1999.  (Docket Entry No. 70-2 at 3).  But this does not provide evidence that Dougherty knew that the receipts were forged or that Dougherty was dishonest about the receipts.  *Cf. Vu v. Rosen*, No. 14-02-00809-CV, 2004 WL 612832, at *10 (Tex. App.—Houston [14th Dist.] Mar. 30, 2004) (affirming finding of bad faith based in part on concluding that the plaintiff "was not truthful or credible").  Dougherty explained that his hesitancy to put the receipts in the marketing materials was a business decision because he only wanted to show them to verified buyers.  (Docket Entry No. 70-3 at 46–47).  Hart may disagree with this business decision, but it does not show that the receipts were forged.

Finally, Hart argues that Dougherty made inconsistent statements about Neil Wood's involvement in his business.  Neil Wood was a broker and a salesman from whom Dougherty had previously purchased cars. (Docket Entry No. 70-3 at 17).  Hart argues that Neil Wood's

understanding in December 2006 that Hart Racing was creating a replica for Dougherty is evidence of Dougherty's knowledge in 2006. Hart relies on a letter from Neil Wood to Dougherty in December 2006 about Hart's pricing in which Wood describes the Birdcage project as an "'exact' replica." (Docket Entry No. 67-10). Hart also relies on emails between Wood and Hart in 2002 and 2006 about Maserati rebuild projects. (Docket Entry Nos. 67-8, 67-9). These communications are evidence of the different understandings of the project, which gave rise to this lawsuit. Dougherty and Hart apparently never met in person before Dougherty hired Hart to work on the Birdcage. (Docket Entry No. 67-11 at 6). Dougherty did not inspect the chassis or parts in person before he acquired them from third parties, who may have bought them from Wood. (Docket Entry No. 67-11 at 4; Docket Entry No. 70-3 at 26). Dougherty admittedly had no prior experience with the purchase or sale of a Maserati racecar before the Birdcage. (Docket Entry No. 67-11 at 9). Dougherty had some of the parts shipped directly to Hart to use in his work on the Birdcage. (Docket Entry No. 67-11 at 5). Most of Hart and Dougherty's exchanges were by transatlantic telephone. (Docket Entry No. 67-11 at 6). The result is reminiscent of the children's game of "telephone," in which a person passes a message to another and it is quickly altered, even in a line as short as two. Here, the difference in the parties' understandings as to whether the job was to "rebuild," "replicate," or "restore" emerged gradually over time. Dougherty's statements about Neil Wood's involvement are consistent with the game of telephone, in that Dougherty did not know for certain who knew what and when they knew it. This record does not support a finding that Dougherty sued in bad faith, solely to coerce a settlement or based on fraudulent evidence.

Dougherty and Hart Restoration appear to have both lost money on the Birdcage.  No further payment of funds is appropriate.[1]

**III.    Conclusion**

The motion to alter or amend is denied.

SIGNED on February 3, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

---

[1]  Although Hart Restoration refers to Federal Rule of Civil Procedure 11 in its motion, it did not show that it had complied with the procedural prerequisites or met the requirements on the merits.

7